UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRENDA ADKINS,<br><br>      Plaintiffs,<br><br>v.<br><br>LOCAL 705 INTERNATIONAL<br>BROTHERHOOD OF TEAMSTERS PENSION<br>PLAN,<br><br>      Defendant. | No. 08 C 3217<br><br>Judge Shadur |

### LR56.1(b)(3)(C) Statement of Additional Facts

The plaintiff, BRENDA ADKINS, by her attorney, David R. Shannon, for her LR56.1(b)(3)(C) statement of additional facts in response to LOCAL 705 INTERNATIONAL BROTHERHOOD OF TEAMSTERS PENSION PLAN's motion for summary judgment, states:

    1.    Adkins is resident of Frankfort, Illinois. She was born on June 5, 1940. Adkins Aff. ¶2.

    2.    Adkins was employed by Gas City, Ltd. or its successor, A. D. Conner, Inc. from February 1995 through November 18, 2006. She was employed full time and was performing bargaining-unit work under a collective bargaining agreement with Local 705, International Brotherhood of Teamsters. Adkins Aff. ¶3.

    3.    Adkins' job as dispatcher consisted primarily of dispatching drivers via two-way radio, telephone, or Nextel radio-phones to particular locations for shipments of gasoline or diesel; she also prepared "keep-fill" reports which involved calling gas stations daily and getting their "stick-readings" (inventory in the ground) and then recording that information; she also dealt with customers who called in for deliveries. Adkins Aff. ¶4.

    4.    While employed as a dispatcher at A.D. Conner, Adkins had no authority to hire, fire, transfer, lay off, recall or assign employees. She had no authority to discipline drivers or other employees. She did not attend management meetings. She did not exercise any independent judgment. She took orders, but did not give orders. She was treated the same as other dispatchers employed by A.D. Conner -- such as Ernie Hughes and Ted Lowery -- except in regard to her pension. Adkins Aff. ¶5.

     5.    Adkins became a member of Local 705 in February 2003.  At that point, A.D. Conner began making contributions on her behalf to Local 705's pension plan and health and welfare plan.  Adkins Aff. ¶6.

     6.    Adkins received an initial dues receipt from Local 705 for 2003.  Adkins Aff. ¶7.

     7.    Adkins received Local Union No. 705 identification cards for the years 2003, 2004, and 2006.  Adkins Aff. ¶8.

     8.    After Adkins became a union member and a participant in the Local 705's health and welfare and pension plans she received regular mailings from the Local 705 Pension Fund, she received regular mailing from the Local 705 Health and Welfare Fund, and she received regular mailing from Teamsters Local Union 705.  Adkins Aff. ¶9.

     9.    The Pension Fund mailed Adkins a Summary Annual Reports for Local 705 International Brotherhood of Teamsters Pension Trust Fund; the Pension Fund also mailed information regarding the funding status of the Pension Plan, including "Dear Participant" letters and Annual Funding Notices.  Adkins Aff. ¶10.

     10.   The mailings from the Union include "Dear Member" letters ("Because you are a member of Teamsters Local 705, you and your immediate family now have new valuable benefits."), "Dear Brothers and Sisters" letters, and cover letters for the Teamsters Local 705 Membership Identification Cards.  Adkins Aff. 11.

     11.   Letters from the Health and Welfare Fund included letters addressed to "Dear Plan Participant," and Explanation of Benefit forms.  Adkins Aff. ¶12.

     12.   In February 2003, after Adkins became a member of Local 705 (even though she was working as a dispatcher since 1995), she received notification from Local 705 and Blue Cross Blue Shield that she was a part of their Blue Cross Blue Shield network.  Adkins Aff. ¶13.

     13.   Adkins also received Participant Pension Benefit Statements from the Pension Plan beginning in 2004.  Adkins Aff. ¶14.

     14.   In September 2005, while employed by A.D. Conner, Adkins sent a letter to Wanda in the Pension Plan explaining that she had not received pension credits from January 1995 through January 2003.  Bill Aronowitz. who was a union representative and a driver for A.D. Conner helped her draft the letter. She enclosed with that letter a copy of my Social Security earning report.  She asked Wanda to "please investigate and send me a copy of the results."  Adkins Aff. ¶15.

  15. In October or November 2005, Joe Malone of A.D. Conner showed Adkins a letter that he had received via certified mail from the union; it stated that in order from Adkins to receive her full pension, A.D. Conner would have to pay $140,000 (it may have been $160,000). Adkins asked Malone for a copy of the letter, but he said he could not give her one. Adkins Aff. ¶16.

  16. Adkins received correspondence from the Pension Fund in October 2005, and January 2007. The January 2007 letter included an Application to Commence Payment of Pension Benefits, but she did not submit that form to the Pension Fund. Adkins Aff. ¶17.

  17. Adkins called the Pension Fund numerous times in 2006 to inquire about the status of her pension; she was always told that "these things take time" and that it was "in legal." Adkins Aff. ¶18.

  18. Adkins contacted David Shannon, her attorney, in December 2007 to help her with her claim. Adkins Aff. ¶19.

  19. Adkins' husband died in 1997. She has not remarried, and she lives alone in a manufactured home in Frankfort which she owns. The ground rent is $535 per month. She lives on Social Security benefits of $1,437.80 per month.


          BRENDA ADKINS

          /s/ David R. Shannon
      By: _____
          Her Attorney

David R. Shannon
Tenney & Bentley, LLC
111 West Washington Street
Suite 1900
Chicago, Illinois 60602
(312) 407-7800